Oh, yes, Mr. Grisham. Good to see you. And who do we have on video there? Your Honor, my name is David Lockerbie. I'm an assistant attorney general, and I represent Timothy Pellegrome as the appellate in this case. Oh, yes. Fine, Your Honor. Thank you. Okay, who's the appellant here? The appellant is the government, right? Yes, Your Honor. Okay, sir. Mr. Lockerbie, you go first. All right, Your Honor. I'd like to go back first to talk about what time it was and how awake we are. I may look awake, but it's just a facade. It's very early here. This case involves the removal from office of a cabinet-level gubernatorial appointee, the Special Assistant for Women's Affairs, at the conclusion of the term of the appointee governor and or at the conclusion of her contract of employment. In 1986, the state of my constitution was amended to provide for the creation of the office of Special Assistant for Women's Affairs. The constitutional amendment contains the phrase, the Special Assistant may only be removed for cause. That sounds pretty clear. It is the definition. Well, what's unclear about that? What's unclear about that? You can only be removed for cause. Okay, there's nothing unclear about it until you try to apply it to this position. And you find that it can mean she can only be removed for cause within the term of the appointed governor or does it create a lifetime appointment? She can only be ever removed for cause, a person occupying that position. Well, they could have easily said she can only be removed for cause within the term of the governor that appoints her, right? But they didn't say that. No, they didn't say that. No, that's true. So it seems like anecdotally in the past everyone has resigned when requested for when the new administration comes in. But Ms. Peter Pelican read the constitution and said, oh, but look, I don't have to resign. You can only get rid of me for cause. Well, basically that's what happened. All the personnel records show that every previous special assistant, I believe there were five or six, has resigned at the end of the term of the appointing governor. Everybody here thought that this was just a regular political appointee. It's a cabinet level position. The governor is allowed to choose his own team at that level. Then why did she have that term contract, though, too? Well, you have to have a contract basically to work for the government. So, so, so, so all the cabinet, you know, everybody in the cabinet is an employee of the government. They all get paid. And and those are the those are the so they all have they all have contracts because the contracts, at least in this particular case, her contract showed that she was employed for 4802. It should have been three months after the after the succeed after the after which had been three months into the appointing of his term governor without him. But the office was simply vacant before that time. So so they made the contract show from 4802 to 4806, which would have been actually technically three months after the conclusion of his term. So what's your strongest evidence that this is a political appointment? Because it seems to be it seems to be a little bit of you got a contract. Then you've got this phrase in the Constitution that says she can only be removed for cause. You know, what's your strongest argument that she's because, you know, my understanding of political appointment is usually people serve at will. And you know, you see this all the time, like the presidents get rid of their chief of staff or they, you know, the heads roll when things go wrong and they get so. But at any rate, at the end of the time period, but they're at will employees. She's not an at will employee, I guess. But not during the term of the appointing governor. I'll agree with that. And there are two other positions that have been cited in her paper. And created by that same constitutional convention in which two other positions were created. I can't even name them right now. And both of them did have limited terms, six years and eight years, I think. But they're also but they're also political appointees. They're also regarded as political appointees. Well, is there any case on the books that Mr. Villagomez, that the new governor, should have known that he couldn't remove her except for cause? Is there any case on the books? It should have known that he couldn't remove her except for cause. It has to be clearly established, right? Yeah, no, no, no. I found no cases like that. And no cases have been cited in this case ever that would have shown that to my knowledge. No, there's no case. And that's a good point. We're not here to win a case. We're just talking about qualifying a candidate. And what the lieutenant governor saw, Mr. Villagomez at the time was the lieutenant governor. What the lieutenant governor saw when he basically discharged the plaintiff, the legal landscape for him was everybody had always regarded as a political appointee, including the appointees themselves, all of the previous special assistants. There was no case law in any jurisdiction that addressed this exact same point. The closest case law are the mandatory retirement age cases that I cited in my brief, in which all civil service systems that were established in the constitutions in various states, with civil service, granted civil service protections, and they either can't be removed except for cause or during good behavior or some comparable phrase. As people began to live and work longer, the states began to pass mandatory retirement age legislation, and those cases were litigated. The civil service employees, the older civil service employees objected to being removed. They said, look, we can only be removed for policy. There's nothing wrong. And the majority of those cases that were heard by courts said that that phrase does not in and of itself establish the tenure of office. It establishes that while you hold the office, you may only be removed for cause, but it doesn't establish how long you can hold the office. There's also a common law presumption that if a place appointing a public official is ambiguous or not clear, then you will be interpreted as to the shortest term. So if you've got two terms you can look at and we're not sure which one applies, we're going to we're going to apply the shortest term. So you want to spend some time for a bubble. Yes, you are. Thank you. The only issue in this appeal is whether the legal norms violated were clearly established. It's a legal issue. That's what's before the court. I'd like to quote briefly from the seminal case, Harlan Fitzgerald, where an official could be expected to know that certain conduct would violate statutory or constitutional rights. He should be made to hesitate. And a person who suffers injury caused by such conduct may have a cause of action. Made to hesitate. What case do you have that establishes that for cause? Establishes the meaning of the phrase for cause. Well, there's a U.S. Supreme Court case, Arnett versus Kennedy, 416 U.S. 134, which references the term cause. And that term was attacked because it was vague and one couldn't follow it. And the court determined, well, that is sufficient. You can start determining what cause really means. And in this case, an appointment to a position where the termination can only be done for cause gives a property right. And in the context of. Are there any CNMI cases interpreting this phrase? I don't have any. In the absence of any cases in CNMI interpreting its own constitution, what sources would CNMI look to? I think CNMI would look to the common ways of determining cause. And you can find those in the Constitution. For instance, there are two other positions which were set up at the same time that the Office of Women's Affairs was. We have for cause, for example, neglect of duty, conviction of a felony, felony involving moral turpitude. I think those are standard for cause reasons to terminate someone from a position. And I think the Commonwealth would follow that since they generally follow U.S. and close common law. So I'm going to fall back on that. Mr. Cussey, there might be a difference, however, between the reasons for which a governor might be able to terminate his special counsel for women's affairs during his own term in office and whether a governor coming in, the successor in office, would come in and think that a prior appointee had a lifetime interest in that position. Do you have anything that would address the question of for cause as applied to changes in administration? No, Your Honor, I do not. Because under the current circumstances, it's very clear from the legislative history in this that the matter of an at-will appointment was the initial proposal to the Constitutional Convention. The language in that initial proposal was that the nominee or person holding the position would serve at the pleasure of the governor. But how could your client have thought, I mean, number one, we've got a contract here, on the one hand, and the contract fixes terms. And on the other hand, there's been, were there other women or men that had held this particular position, or was she the first? She was not the first. There was probably about a half a dozen. And the other people resigned when the administration changed, right? Well, whether they resigned because a new administration came in, we don't know. Whether they resigned because they were incompetent, we don't know. Whether they were fired, the record does not reveal this. Outside the record, I can answer some of those questions, but not in the record. But I guess we don't have anyone that has had the exact situation as your client, right? Whereas Clinton, making the claim that your client is making. That's true. So I guess on the second, since person B Callahan says that as a court, we can go to the second prong and say, if something's not clearly established, you know, that we can handle it that way. How is this clearly established when we're spending so much time talking about this? It's clearly established because it's in the Constitution. It says that there will be termination only for cause. Those words are clear, but we have no interpretation of them. And the past people have always, for whatever reason, haven't continued on to the next administration. That's true. However, if we're stuck with defining the word cause, the word cause is used in the Commonwealth Constitution. There are all sorts of reasons that a person can be terminated for cause, and we can fall back on those. How horrific was she terminated? What exactly did the defendant here do to cause termination? What actually happened? What actually happened is she supported the preceding governor. No, no, I'm not talking about... That's what happened. No, I'm saying, she has an appointment, right? She's getting paychecks. Right. What caused the paychecks to stop? How did that happen? The new administration just stopped paying her. They asked her to resign first, right? Is it an order, or is it a personnel action form? There's a personnel action form. That's why I do take issue with Justice Callahan, that there was no contract. There is no contract. There is a gubernatorial appointment to the position. And she can only be removed from the position for cause. That is some reason. And she was not removed for cause, and the government... I see a personnel action form for her appointment. Right. Is there another form terminating that one? There was a personnel action form, a terminator. Is it in the NACSA or something? Yes, it is. Here. The original personnel action form set out a term of 408, I believe, 02 to 06. Right. And the position of the government was that at that time, she was cut off. Is there another personnel action form? No, Your Honor, I don't think... I don't quite understand what it is. If, in fact, she's got an appointment, then by its terms, it has four years. And at the end of it, they stop paying her money. What has defendant did with that? Your Honor, the problem is that's not the factual and legal situation. She doesn't have an appointment for four years. This is a personnel form. The personnel officer at the time, Juan Tenorio, filed his affidavit saying, this has nothing to do with the term of appointment. What it does have to do with is getting her on the payroll. If she doesn't have this personnel action filled out, she can't get paid. That's all it's for. And this authorizes payments for four years until 4806. That's what the form says. Yes, Your Honor. So I don't understand where she was terminated. I mean, they stopped paying her money. They stopped paying her a salary. And they told her that she had to get out of the office by the particular date, April 8th, or she would be thrown out physically. She got out, I believe, at about 6 p.m. or so. So she wasn't physically ejected from the office. So they didn't really terminate her. What happened is this term expired. And then at that point, she was no longer doing the salary Her original appointment doesn't exceed. Her original personnel action form does not go beyond four years. Her personnel action form does not. But she has a for-cause term under the Commonwealth Constitution. But it seems to me what you're complaining about is that they failed to cut a second form saying you get paid more money after this date. No, what we're complaining about is that she was threatened to be physically thrown out of the office. And we said she has no right to be thrown out of the office because she didn't commit any act. She engaged in no conduct that would arise to a cause for dismissal. You have to understand that in the pleadings, in paragraph 15 of the answer, the government concedes she was not terminated for cause and there was no hearing. So it appeared to me that based upon their response to our allegations and the summary judgment, they don't have a defense. And if we have the lieutenant governor at the time, just on the quote that I gave from Harlow, if he had hesitated, what would he have done? He would have gone to see his lawyers and asked, do I have to have a reason for terminating this lady? And they would have said yes. But they would have also said maybe we can get around it. You're now hypothesizing as to what he would have done. Well, I think that's reasonable, lieutenant governor. But the fact is there's no form here. There's nothing the defendant here has done to stop her payments. I mean, the payments stopped because this only extended to 4-8. And he didn't then say keep paying her anyway. He didn't cut another form saying keep paying her anyway. The payments stopped. There was no further salary, even though she wasn't terminated. She couldn't be terminated. She just wasn't getting paid. She should be in the position right now because they concede that she was not terminated for cause. She was terminated because she was in the wrong political group. But that's not for cause. Mr. Cusick, the question of for cause removal of appointees to the administration of Washington has been a source of a great deal of constitutional controversy for 60 years now, or better than that, 80 years. Can you think of another statute, an analogy in the federal system in which we have appointees who are appointed for cause, I mean, who have a for cause removal provision but don't have a fixed term? I can't think of one. Can you think of one? She does not have a fixed term. There are certain independent regulatory commissions in Washington, the FCC, FTC, and so on. They only be removed for cause, but all of them have a fixed term. I'm trying to think if there's any analogy anyplace else where we have an official who is appointed for cause but does not have a fixed term attached to it. The only, of course, is a federal judiciary. But I don't think our provisions say for cause. No, it doesn't say for cause. I understand the analogy, but I'm trying to think if we can find another official where we've used that precise phrase for cause without having the specified term of service. I cannot think of any in the federal government. However, it is very clear that we're not talking about the federal government. We're talking about a constitutional provision that was closely considered, obviously, because it was an at-will appointment. That's where we started this ballgame. There were hearings, and the public, the Constitutional Convention, decided that there would be no set term, that when a woman was appointed to hold this position, it didn't matter whether she was Democrat, Republican, or not. She was to promote women's affairs. It wasn't a matter of politics. It was a matter of doing the job right. Well, I can see reasons for it when it initially started, because they obviously felt that there was prejudice, and they didn't want someone coming in, making certain recommendations and changes, and then having retaliation so that they couldn't have any improvement. But still, how does that, you know, even, maybe even that being the case, still, we need to, you know, what other position, you know, how does that trump that governors can pick their own person for women affairs? Because it's a constitutional provision. It says for cause. And the governor cannot use his arbitrary discretion to hire and fire at will. It's a constitutional provision. And the personnel action is not going to trump that. And some governor coming in, just because he likes A instead of B, is going to throw A out. You can't do that, and it was deliberately considered. You can look at the constitutional history, and if the lieutenant governor at the time had done so. And does the legislative history say that it was clear that the position was to extend across administrations? It didn't speak to administrations. It said for cause. But the initial one was at the governor's will. So if you go to Judge Callahan's point, that would have allowed governors to replace the specialist for women's affairs at will, and multiple times during a single administration. But that was barred. Specifically considered and barred. So there was nothing left but a for cause determination. And the for cause determination is just that. There has to be a legitimate legal reason. And the government concedes there was none. What about judicial officials in CNMI? Do they have life tenure? No. So the special assistant for women's affairs has more protection than the chief justice of the Supreme Court? As far as employment goes, yes. Is there any other official in CNMI who has similar employment protection? I can think of none that have the language that's in our constitution for this particular position. But I would caution that simply because it's unique doesn't mean it's wrong. Because it was considered, and it was in the macho society of the Commonwealth of the Northern Mariana Islands, something like this to protect and promote women's rights is exceedingly important. And I would ask that the court here not second-guess what the district judge did there in light of the ambience, shall we call it, of living in the Northern Mariana Islands with respect to women's rights and the role of women in society. If there's other questions, I think I've said enough. Thank you very much. We have Mr. Lockerbie. You've got a couple of minutes. Yes, Your Honor, just a few points. As has been established, every previous occupant of the office of special assistant for women's affairs had resigned at the conclusion of the term of the appointing governor. And when she didn't resign, the new administration was dumbfounded. What do you mean? What do you mean she says she can stay in office? So a series of negotiations took place, and it was decided her personnel documents were reviewed. It's interesting that plaintiff claims she doesn't have a contract this morning when in her pleadings in this very lawsuit she has a count of breach of contract in it. So it was decided that, well, she does have papers that show she's employed from 4802 to 4806. Let's let her stay until the end of that term so there won't be any argument about it, and maybe we can avoid this very lawsuit that we're in right now. So we'd better stay that long. It took her about a week later to go ahead and actually vacate the office. I don't know about the risk to physically remove her. She vacated the office on 415, I think. And so she wasn't terminated. I mean, she wasn't terminated. Her term either expired at the end of the period of office of the appointing governor or it expired on 4806 at the end of her employment papers. She wasn't terminated. It was just time to go. There's no prohibition in the Constitution, in this amendment, there's no prohibition to appoint a special assistant for a set term. Now, I'm sure nobody thought about that when they filled out those papers, because nobody anticipated anything like this was going to occur. But now that we have to look at it, there's no reason in the world why a governor could not appoint a special assistant for women's affairs for one year or two years or three years. He can't exceed his own term. He or she could not exceed their own term, but they could certainly do that. I don't think there's any problem with that. There were questions about the federal government, the Supreme Court, in Shurtleff v. United States, 189 U.S. 311. The Supreme Court recognized and applied a strong presumption against the creation of a life tenure in a public office under the federal government. Also, another case I'll brief. The trial court relied on the Castro v. Board of Commissioners, in part, a First Circuit case in 1943 as supporting its orders of denying qualified immunity. I shepherdized that case, and it went to the Supreme Court, and they shared an opinion. In that opinion, the Supreme Court stated, in that opinion, as found in the 322 U.S. 451 of the 1944 case, this involved an appeal of the city manager of San Juan Puerto Rico, I think, who was appointed to an office. When did they refer to the Supreme Court of the Commonwealth? I'm sorry. When did they refer to the interpretation by the Supreme Court of the Commonwealth? I'm sorry, I don't understand your question. The Supreme Court of the United States? Yes. Did it defer to an interpretation of the statute by the Supreme Court of the Commonwealth of Puerto Rico? Of Puerto Rico? Yes. Yes, that's true. We don't have that here. Maybe we should certify this to the Supreme Court of Saipan. That's certainly an option. That's certainly an option. Okay, thank you very much. You're all welcome. Thank you. Thank you. I'm sorry. We're cancelling it. Roger.
judges: Kozinski, Bybee, Callahan